IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Joanna Sylvester, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | 1:23-cv-4568 |
| vs. | ) | |
| | ) | |
| Chicago Housing Authority, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant | ) | |
| | ) | |

## COMPLAINT

Plaintiff Joanna Sylvester, by and through her attorneys, Mary Rosenberg and Access Living of Metropolitan Chicago, for her complaint against Defendant Chicago Housing Authority ("CHA"), states as follows:

## INTRODUCTION

1. Plaintiff Joanna Sylvester has lived in a five-bedroom public housing unit with her family for over 25 years. She and her daughter, Sereniti, both have physical disabilities. Beginning in or around 2019, Sereniti needed to wear casts or braces on her legs to assist with mobility. She also uses a walker to get around. Ms. Sylvester uses a cane to walk long distances and has trouble navigating stairs.

2. In the over 25 years Ms. Sylvester and her family have lived in her unit, it has fallen into severe disrepair, including holes in the wall and floors, and a rat and roach infestation. The CHA failed to address these conditions until October 2022, when a CHA representative finally came to see Ms. Sylvester's unit. After the visit, the CHA agreed to transfer the family to a new unit.

3. Despite CHA's knowledge of both Ms. Sylvester's and her daughter's need for an accessible unit, it offered Ms. Sylvester units that were either (1) inaccessible, or (2) contained only three bedrooms. A three-bedroom unit would require Ms. Sylvester's twenty-three-year-old son to share a bedroom with either one of his sisters, who are eleven and seventeen, or his eleven-year-old niece.

4. Defendant CHA's actions violate the federal Fair Housing Act and Section 504 of the Rehabilitation Act of 1973.

## PARTIES

5. Plaintiff Joanna Sylvester ("Ms. Sylvester") lives at 2153 W. Adams Street, Apartment A1, Chicago, Illinois 60612.

6. Defendant Chicago Housing Authority ("CHA") is an Illinois municipal corporation, created and existing under the Illinois Housing Authorities Act, 310 Ill. Comp. Stat. 10/1 *et seq.* Defendant Chicago Housing Authority owns Ms. Sylvester's unit.

## JURSIDICTION AND VENUE

7. The Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 and 42 U.S.C 2613(a). Plaintiff's claims for declaratory and injunctive relief are authorized under 28 U.S.C. §§ 2201-02 and 42 U.S.C § 3613(c)(1).

8. Venue is proper in the Northern District of Illinois under 28 U.S.C § 1391(b) because Defendant resides there and because a substantial part of the events or omissions giving rise to Plaintiff's claims arose there.

## LEGAL BACKGROUND

Section 504 of the Rehabilitation Act of 1973

9. Section 504 of the Rehabilitation Act states that "[n]o . . . qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . ." 29 U.S.C. § 794(a). Ms. Sylvester and her daughter Sereniti are both qualified individuals with disabilities under Section 504.

10. Ms. Sylvester's building is federally-subsidized housing and therefore the CHA must comply with Section 504. *Id*. at § 794(b)(3)(A)(ii)(Section 504 applies to corporations, partnerships, or private organizations that are "principally engaged in the business of providing . . . housing . . .").

11. Section 504 requires recipients of federal funds to provide reasonable accommodations to people with disabilities. 24 C.F.R. § 8.33. A reasonable accommodation is "a change, modification, alteration, or adaptation in policy, procedure, practice, program, or facility that provides a qualified individual with a disability the opportunity to participate in, or benefit from, a program or activity." U.S. Department of Housing and Urban Development ("HUD"), People with Disabilities – Section 504: Frequently Asked Questions, *available at*: http://portal.hud.gov/hudportal/HUD?src=/program_offices/fair_housing_equal_opp/disabilities/sect504faq.

12. CHA's Admissions and Continued Occupancy Policy ("ACOP:) provides a non-exhaustive list of transfers that would be considered reasonable accommodations, including:

    i. Transfers to a unit which provides an extra bedroom for a live-in aide, large medical equipment, a separate room for a family member needing extra space for a verified medical need (e.g., a child who may have loud, disruptive/violent outbursts), etc.;
    ii. Transfers to a unit located on the first floor of a development; iii.
    iii. Transfers to a unit without mobility barriers, such as stairs, carpeting, etc.; and
    iv. Transfers to units with sensory equipment.

3

2022 CHA ACOP (hereinafter "ACOP") pg. 47-8 *available at*: http://cha-assets.s3.us-east-2.amazonaws.com/s3fs-public/2022-07/approved_fy2022_admissions_and_continued_occupancy_policy_-_effective_7-19-2278_0.pdf

13. Under the ACOP, "[r]esidents who request a transfer will receive only one unit offer; however, multiple unit offers may be made to satisfy a reasonable accommodation request." ACOP at 46.

14. In addition, "PHAs [public housing authorities, here, CHA] must bear the reasonable costs of . . . all transfers needed as a reasonable accommodation for residents with disabilities. . . The reasonable cost of transfers includes not just the cost of packing, moving, and unloading, but also the cost of disconnecting and reconnecting any existing resident-paid services such as telephone and cable television." HUD Public Housing Occupancy Guidebook at 150, (June 2003), *available at*: https://www.hud.gov/sites/documents/DOC_10760.PDF; *See also* ACOP at 51 ("The CHA will pay the costs associated with moving, storage (up to 90 days), and transfer of utilities . . . for all transfer types, except transfers prior to RAD PBV conversion and Voluntary Administrative Transfers.").

<u>Fair Housing Act</u>

<u>Disability</u>

15. In 1968, Congress enacted the Fair Housing Act, which prohibits housing discrimination based on race, gender, national origin, and religion. 42 U.S.C. § 3604. In 1988, the Fair Housing Amendments Act extended the Act's protections to familial status and disability. *Id*.

4

16. Under the FHA to "discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a [disability] of—that buyer or renter…[or] any person associated with that buyer or renter." 42 U.S.C. 3604(f)(1). Discrimination includes failing to "make reasonable accommodations in rules, policies, practices or services when such accommodations may be necessary to afford [a person with a disability[1] an] equal opportunity to use and enjoy a dwelling." *Id*. at 3604(f)(3)(B).

Familial Status

17. "Familial Status" under the FHA means "one or more individuals (who have not attained the age of 18 years) being domiciled with . . . a parent or another person having legal custody of such individual or individuals." *Id*. at § 3602(k).

18. The Keating Memorandum, which articulates HUD's position on occupancy standards and familial status under the Fair Housing Act, states:

> Specifically, [HUD] believes that an occupancy policy of two persons in a bedroom, as a general rule, is reasonable under the Fair Housing Act. However, the reasonableness of any occupancy policy is rebuttable, and neither [a previous memorandum] nor this memorandum implies that the Department will determine compliance with the Fair Housing Act based solely on the number of people permitted in each bedroom.

Keating Memorandum, 63 FR 70982, 70894 (March 20, 1991) *available at*: https://www.hudexchange.info/resource/6632/occupancy-standards-keating-memorandum-63-fr-70982/

19. Likewise, the Illinois Department of Children and Family Services regulations governing foster children only allow opposite-gender children to share a room when they are

---

[1] The FHA uses the term "handicap," which is disfavored by people with disabilities. "Disability" has the same legal meaning.

under six, and state that an adult cannot share a room with a child except in emergency situations. 89 Ill. Admin. Code 402.9(c) and (f).

20. HUD, whose regulations govern public housing, "does not specify the number of persons who may live in public housing units of various sizes." HUD PIH Guidebook at 5-1 *available at:* https://www.hud.gov/sites/documents/74651C5PIHH.PDF. Rather,

> In assigning families to public housing, a PHA may allow families to occupy units of sufficient size so that persons of opposite sex (other than spouses), persons of different generations, and unrelated adults may have separate bedrooms. . . A PHA is free to allow families large enough units to enable persons in these categories to have separate bedrooms, without also having to allow families to occupy units of sufficient size for persons of the same sex, persons of the same generation, or related adults to have separate bedrooms.

*Id.*

21. The CHA ACOP allows the head of household (here, Ms. Sylvester) to have her own bedroom. ACOP at 26-7. However, notwithstanding the HUD PIH Guidebook and Keating Memorandum, both cited above, the ACOP states that every two other occupants must share a room. *Id.*

## STATEMENT OF FACTS

22. Ms. Sylvester has lived in a five-bedroom public housing unit located at 2155 W. Adams Street, Apartment A1, Chicago, Illinois, 60612 ("subject property") since September 1997. She lives with her seventeen-year-old daughter Layla, eleven-year-old daughter Sereniti, twenty-three-year-old son Harold, and eleven-year-old granddaughter Ryan. There are roughly five stairs to get into the unit.

23. Ms. Sylvester has an apparent disability that affects her mobility. She uses a cane to walk long distances and to navigate stairs.

24. Ms. Sylvester's daughter Sereniti also has an apparent mobility disability. She wears metal braces or casts on both her legs, and uses a walker some of the time. Sereniti needs assistance when walking long distances, and has difficulty walking up and down stairs.

25. In the over 25 years Ms. Sylvester's family has lived in its current unit, the CHA has failed to make any substantial repairs. Accordingly, the unit is in deplorable condition. There are holes in the walls, holes in the floors, broken windows, water damage from the ceiling, and a rat and roach infestation. The current living standards in the unit threaten the health and safety of Ms. Sylvester and her family.

26. Over many years, Ms. Sylvester has requested that (a) multiple property management companies, including Hispanic Housing, the current property manager, and (b) the CHA, inspect the property and make repairs. Despite her efforts, no substantial repairs were made.

Reasonable Accommodation Requests

27. In or around 2019, when Sereniti turned 8, she began to need either casts or braces on her legs, and it became more difficult for her to climb the stairs to her unit.

28. Three years ago, to address this issue, Ms. Sylvester requested that Russell Development - the property management company at the time - install a second handrail on the stairs as a reasonable modification. This would allow Sereniti to hold a handrail on each side of her when using the stairs, which would enable her to use the stairs independently. That request was denied.

29. When the next property management company, East Lake Management, took over, Ms. Sylvester again requested that an additional handrail be installed on the stairs, and provided written documentation of her daughter's disability and need for the modification. East

Lake told Ms. Sylvester the request would be granted; however, East Lake never installed the handrail.

30. Around the same time, Ms. Sylvester also requested that CHA transfer her to a unit without stairs. East Lake granted that request, but never transferred her family.

<u>Defendant offers Ms. Sylvester Other Units</u>

31. In October 2022, CHA representatives finally came to see Ms. Sylvester's unit. After seeing the deplorable conditions, CHA agreed to move Ms. Sylvester and her family to a new unit.

32. Since October 2022, CHA has shown Ms. Sylvester three units, none of which meet her family's needs.

33. Initially, CHA offered her a unit at 2111 W. Randolph Street in Chicago. The unit is on the second floor of a building without an elevator. To reach the front door requires climbing fourteen steps. In addition, the unit itself includes an interior stairway. That stairway lacks a railing for the first few steps, and is winding, which is particularly hard for Sereniti to navigate.[2] Therefore, Ms. Sylvester could not accept the unit.

34. CHA also offered Ms. Sylvester a unit at 2118 W. Maypole Avenue, Apartment B, in Chicago. Like the first, this unit is also on the second floor of a building without an elevator. To reach this unit requires climbing about ten steps without a railing. Like the first unit, the unit itself includes an additional interior stairway. Therefore, Ms. Sylvester could not accept the unit.

35. Finally, CHA offered Ms. Sylvester a three-bedroom unit at 1815 West Monroe Street. Although this unit is accessible, it was too small to accommodate her family. One of the

---

[2] Ms. Sylvester asked CHA's representative whether a second handrail could be added to the interior stairway in an attempt to mitigate the difficulty. The representative said no.

bedrooms could scarcely accommodate a twin-sized bed, let alone two individuals. Further, as discussed below, the size of the unit would require Ms. Sylvester's adult son to share a room with one of Ms. Sylvester's minor daughters or her minor granddaughter.

### CHA attempts to Downsize Ms. Sylvester's Family

36. Ms. Sylvester's current apartment has five bedrooms. This allows each of her family members to have their own bedroom.

37. When CHA began showing Ms. Sylvester the units described above, it insisted she be downsized to a three-bedroom unit. Presumably, CHA was following its policy that while the head of household may have their own room, all subsequent two family members much share a room, as described in paragraph 21.

38. This decision would require Ms. Sylvester's twenty-three-year old son to share a bedroom with one of Ms. Sylvester's minor daughters or granddaughter.

### Ms. Sylvester Renews Requests for Accommodation

39. On October 20, 2022, Access Living, on behalf of Ms. Sylvester, submitted to the CHA a request that she be transferred to an accessible unit as a reasonable accommodation. The letter requested Ms. Sylvester's family (1) be transferred to an accessible unit, and (2) be allotted four bedrooms, so that Ms. Sylvester's son would not have to share a bedroom with one of her minor daughters or granddaughter.

40. On October 21, 2022, CHA stated it was not obligated to provide Ms. Sylvester's family with more than three bedrooms, and since it had offered Ms. Sylvester a three-bedroom, accessible unit, it had complied with its obligation reasonably to accommodate the family under disability discrimination laws. CHA also disputed whether Ms. Sylvester or her daughter had apparent disabilities, and required them to turn in documentation of their disability again.

41. On October 26, 2022, Ms. Sylvester's counsel responded via email that the units Ms. Sylvester had been shown were either too small or inaccessible, as described above, and again requested an accessible, right-sized unit. CHA never responded.

## COUNTS

### Count I: Failure to Make a Reasonable Accommodation under Section 504

42. Ms. Sylvester re-incorporates and re-alleges the preceding paragraphs of this Complaint as if fully set forth herein.

43. Ms. Sylvester and her daughter need an accessible unit as a reasonable accommodation for their disabilities. Despite numerous requests, CHA has shown Ms. Sylvester only one unit that is accessible – but none that are both accessible and the right size for her family.

44. This situation has caused damage to Ms. Sylvester and her family. Because of CHA's failure to provide an accessible unit to the family, they have been forced to live in uninhabitable, dangerous conditions.

45. Defendant acted intentionally, willfully, and/or in reckless disregard of Ms. Sylvester's rights.

### Failure to Accommodate under the federal Fair Housing Act

46. Ms. Sylvester re-incorporates and re-alleges the preceding paragraphs of this Complaint as if fully set forth herein.

47. Over the past 3 years, Ms. Sylvester made several requests for a second railing to be installed on her unit's stairs, and a request for an apartment without steps, all of which were ignored.

48. On October 20, 2022, on behalf of Ms. Sylvester, Access Living submitted a reasonable accommodation request for an accessible unit to the CHA.

49. The CHA failed to grant Ms. Sylvester's reasonable accommodation request for an accessible unit because it refused to show her appropriately-sized, accessible units. This action violates the Act.

50. The CHA's failure to grant Ms. Sylvester's accommodation request caused her and her daughter damage. Because of CHA's failure to grant her reasonable accommodation request, Ms. Sylvester and her family continue to live in an inhabitable unit.

51. Defendant acted intentionally, willfully, and or in a reckless disregard for Ms. Sylvester's rights.

Familial Status Discrimination under the Fair Housing Act

52. Ms. Sylvester re-incorporates and re-alleges the preceding paragraphs of this Complaint as if fully set forth herein.

53. The federal Fair Housing Act prohibits discrimination based on familial status. 42 U.S.C. § 3604.

54. CHA's insistence that Ms. Sylvester's adult son share a bedroom with one of her young daughters, or her granddaughter, constitutes discrimination based on familial status.

55. The CHA acted intentionally, willfully, and or in a reckless disregard of Ms. Sylvester's rights.

WHEREFORE, Plaintiff Joanna Sylvester respectfully requests that this Court:

A. Declare that Defendant's acts constitute discrimination under the Fair Housing Act. 42 U.S.C. § 3604(f)(3)(B);

B. Order Defendant to transfer Ms. Sylvester's family to a four-bedroom or larger accessible unit;

C. Order Defendant to transfer Ms. Sylvester's family to a habitable four bedroom or larger unit until a four-bedroom accessible unit may be found;

D Award Plaintiff actual damages, including pain and suffering resulting from Defendant's illegal discrimination;

E. Award Plaintiff punitive damages as a result of Defendant's willful, malicious, or reckless conduct;

F. Award Plaintiff her reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 3613(c)(2);

G. Order Defendant to modify its occupancy policy to comport with the Keating Memorandum; and

H. Grant any other relief this court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff requests a trial by jury.

Dated: July 14, 2023                                              Respectfully Submitted,


                                                                  /s/ Mary Rosenberg
                                                                  One of the Attorneys for Plaintiff



Mary Rosenberg
Kenneth M. Walden
Charles Petrof
Access Living of Metropolitan Chicago
115 W. Chicago
Chicago, Illinois 60654
mrosenberg@accessliving.org
Phone: (312)640-2155

Fax: (312) 640-2155